**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------

SHIVA STEIN,                                              :
                                                         :
        Plaintiff,                                   :   Civil Action No. _____
                                                         :
v.                                                       :
                                                         :   **COMPLAINT FOR VIOLATIONS OF**
VIRTUSA CORPORATION, KRIS                                :   **SECTIONS 14(a) AND 20(a) OF THE**
CANEKERATNE, IZHAR ARMONY,                               :   **SECURITIES EXCHANGE ACT OF**
JOSEPH DOODY, DEBORAH C. HOPKINS,                        :   **1934**
ROWLAND T. MORIARTY, BARRY R.                            :
NEARHOS, ABIDALI NEEMUCHWALA,                            :   **JURY TRIAL DEMANDED**
WILLIAM K. O'BRIEN, VIKRAM S.                            :
PANDIT, AND AL-NOOR RAMJI,                               :
                                                         :
        Defendants.                                  :

---------------------------------------------------------

       Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

       1.     This is an action brought by Plaintiff against Virtusa Corporation ("Virtusa or the "Company") and the members of Virtusa's board of directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Virtusa by Baring Private Equity Asia Pte. Limited ("BPEA") and BPEA's affiliates.

       2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on October 7, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Proxy Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Austin BidCo Inc., an affiliate of BPEA and a wholly-owned subsidiary of Austin HoldCo Inc., will merge with and into the Company, with the Company surviving as a wholly-owned subsidiary of Austin HoldCo Inc. (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Virtusa common share issued and outstanding will be converted into the right to receive $51.35 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Virtusa stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction, and information regarding the sales process.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Virtusa stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Virtusa in incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Virtusa common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Kris Canekeratne, one of the Company's co-founders, has served as a member of the Board and its Chairman since the Company's inception in 1996 and as Chief Executive Officer from 1996 to 1997 and from 2000 to the present.

11.     Individual Defendant Izhar Armony has served as a member of the Board since April 2004.

12.     Individual Defendant Joseph Doody has served as a member of the Board since February 2017.

13.     Individual Defendant Deborah C. Hopkins has served as a member of the Board since September 2018.

14.     Individual Defendant Rowland T. Moriarty has served as a member of the Board since July 2006.

15.     Individual Defendant Barry R. Nearhos has served as a member of the Board since March 2016.

16.     Individual Defendant Abidali Neemuchwala has served as a member of the Board since June 2020.

17.     Individual Defendant William K. O'Brien has served as a member of the Board since November 2008.

18.     Individual Defendant Vikram S. Pandit has served as a member of the Board since May 2017.

19.     Individual Defendant Al-Noor Ramji has served as a member of the Board since February 2011.

20.     Defendant Virtusa is incorporated in Delaware and maintains its principal offices at 132 Turnpike Road, Southborough, Massachusetts 01772.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "VRTU."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.   The Proposed Transaction

23.     Virtusa provides digital engineering and information technology (IT) outsourcing services primarily in North America, Europe, and Asia.  The Company offers business and IT consulting services, including advisory/target operating model, business process re-engineering/business process management, application portfolio rationalization, and business/technology alignment analysis; digital transformation services, such as digital strategy user experience and design, application and platform engineering analytics, intelligent automation content and customer experience, and cyber security; and cloud transformation services comprising cloud strategy and migration, cloud native applications, and capex to opex models.  It also provides application development, software product engineering, CRM and SAP implementation, content management, enterprise mobility, cloud computing, social media, and cloud engineering solutions; systems consolidation and rationalization, technology migration and porting, and Web-enablement of legacy applications; data management, business intelligence, reporting and decision support, master data management, data integration, big data analytics, data lake, and data on the cloud services; and software quality assurance and managed testing services. In addition, the Company offers application enhancement, maintenance, and support, and cloud-environment management and support; managed infrastructure, and remote application monitoring and support services; and IT efficiency improvement services.    Further, it offers digital engineering and operational excellence services-based, and transformational solutions. Virtusa serves communications and technology; banking, financial services, and insurance; and media and information industries.  The Company was formerly known as eRunway, Inc. and changed its name to Virtusa Corporation in April 2002.  Virtusa was founded in 1996 and is headquartered in Southborough, Massachusetts.

24.     On September 10, 2020, Virtusa announced that they had entered into a proposed

transaction:

> SOUTHBOROUGH, Mass.--(<u>BUSINESS WIRE</u>)--Baring Private Equity Asia
> ("BPEA"), one of the largest and most established private alternative investment
> firms in Asia, and Virtusa Corporation (NASDAQ GS: VRTU) ("Virtusa" or the
> "Company"), a global provider of digital strategy, digital engineering, and IT
> services and solutions that help clients change and disrupt markets through
> innovation engineering, today announced the companies have entered into a
> definitive merger agreement under which funds affiliated with BPEA will acquire
> all outstanding shares of common stock of Virtusa for $51.35 per share in an all-
> cash transaction valued at approximately $2.0 billion.
>
> The price per share to be paid in the transaction, which was unanimously approved
> by the Virtusa Board of Directors, represents a premium of approximately 27
> percent to the closing price of Virtusa common stock on September 9, 2020, the
> last trading day prior to the transaction announcement, and premiums of
> approximately 29 percent and 46 percent to Virtusa's volume-weighted average
> prices ("VWAP") for the last 30 and 60 trading days, respectively. In addition, the
> price paid implies a valuation of 16.2x Firm Value / Last Twelve Months EBITDA
> as of June 30, 2020.
>
> Founded in 1997, BPEA is one of the largest independent private equity firms in
> Asia with approximately $20 billion of assets under management. BPEA works
> hand-in-hand with its portfolio companies, providing capital for expansion,
> recapitalization or acquisitions, in order to grow their businesses for the long-term.
> BPEA brings directly relevant and value-enhancing experience in the IT services
> space through six prior investments dating back to 1998.
>
> Jimmy Mahtani, Managing Director of BPEA, said, "Technology is continuing to
> drive marketplace evolution at an unprecedented pace, creating new opportunities
> as well as complexities. Virtusa's global team of talented professionals, software
> engineering heritage, and deep domain expertise position it uniquely to help
> enterprises across industries accelerate their most strategic digital and cloud
> transformation initiatives. We are excited to partner with the Company in its next
> phase of evolution. We're pleased that the Board has approved our offer
> unanimously."
>
> Rowland T. Moriarty, Lead Independent Director of Virtusa's Board of Directors,
> said, "Through this transaction, we are pleased to maximize value and deliver a
> significant, immediate cash premium to Virtusa's shareholders. Today's
> announcement is the culmination of a process by Virtusa and our financial advisors,
> which included engagement with strategic and financial parties regarding a
> potential transaction, and, after a thorough review, the Board unanimously

concluded that this all-cash premium transaction with BPEA achieved the Board's objective."

Kris Canekeratne, Chairman and CEO of Virtusa, said, "This transaction represents a strategic evolution for Virtusa and a unique opportunity to take our business to new heights at a time of accelerating digital adoption. The benefits of this transaction extend to all Virtusa stakeholders, including our shareholders, who will receive immediate and substantial cash value, as well as to our team members, since BPEA has an exemplary track record of valuing innovative and talented global teams and supporting and empowering the businesses in which it invests. With a strong partner in BPEA, we will solidify our position at the forefront of digital transformation for years to come."

On July 20, 2020, the Virtusa Board of Directors received an unsolicited proposal from an interested party to acquire Virtusa. Following receipt of the offer, consistent with the Board's fiduciary duties to maximize shareholder value, the Board authorized the Company and its financial advisors to engage with other potential strategic buyers and financial sponsors regarding a potential acquisition of Virtusa. As part of this process, the Company signed non-disclosure agreements with five parties and engaged with two others. After an independent review of the alternatives available, including the value creation opportunity through continued execution of the Company's strategic plan, the Virtusa Board unanimously determined that the all-cash premium transaction with BPEA for $51.35 per share in cash maximizes value for Virtusa's shareholders.

**Approvals and Timing**

The transaction, which is expected to close in the first half of 2021, is subject to the approval of Virtusa's shareholders, customary regulatory requirements, including approval from The Committee on Foreign Investment in the United States (CFIUS), and customary closing conditions. The transaction is not subject to a financing condition.

The Orogen Group ("Orogen"), which holds 108,000 shares of Virtusa Convertible Preferred Stock and whose CEO is Vikram Pandit, an independent member of the Board, has entered into a voting agreement under which it has agreed to vote all of Orogen's Convertible Preferred Stock in favor of the transaction. Orogen's shares of preferred stock are convertible into 3,000,000 shares of Virtusa common stock and represent approximately 10 percent of the voting power in the Company. The directors and executive officers of Virtusa have also entered into this voting agreement, and hold an additional approximate 5.7 percent of the voting power of the Company.

**Advisors**

J.P. Morgan Securities and Citi acted as financial advisors and Goodwin Procter LLP acted as legal counsel to Virtusa. BofA Securities is serving as financial advisor to BPEA and Ropes & Gray LLP is acting as legal counsel to BPEA.

25.     The Board has unanimously approved the Proposed Transaction.  It is therefore imperative that Virtusa's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

26.     On October 7, 2020, Virtusa filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Virtusa Financial Projections*

27.     The Proxy Statement fails to provide material information concerning financial projections by Virtusa management and relied upon by J.P. Morgan in its analysis.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts, including the

Management Base Plan Projections and Summary of Management Upside Sensitivity Projections for fiscal years 2021 through 2024 (the "Company Projections"), and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Virtusa management provided to the Board and the financial advisor.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     The Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (i) Non-GAAP Income from Operations; (ii) Adjusted EBITDA (pre-SBC); (iii) Adjusted EBITDA (post-SBC); (iv) Adjusted EBIT (post-SBC); (v) earnings per share; and (vi) Unlevered free cash flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a
> uniform definition and its title does not describe how it is calculated.
> Accordingly, a clear description of how this measure is calculated,
> as well as the necessary reconciliation, should accompany the
> measure where it is used. Companies should also avoid
> inappropriate or potentially misleading inferences about its
> usefulness. For example, "free cash flow" should not be used in a
> manner that inappropriately implies that the measure represents the
> residual cash flow available for discretionary expenditures, since
> many companies have mandatory debt service requirements or other
> non-discretionary expenditures that are not deducted from the
> measure.[1]

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the
forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,
Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable
GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analyses*

32.     With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy
Statement fails to disclose the basis and assumptions for selecting the multiple reference range of
9.5x – 10.5x for FV/CY 2021E Adjusted EBITDA and 15.5x – 17.0x for the Company's P/CY
2021E EPS.

33.     With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement
fails to disclose the basis and assumptions for applying an FV/LTM Adjusted EBITDA multiple
range of 11.0x – 16.0x to the Company's Adjusted EBITDA, and an FV/NTM Adjusted EBITDA
multiple range 9.5x – 14.0x to the Company's Adjusted EBITDA.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April
4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

34.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the terminal values calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 9.0% to 10.0%; and (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.5% to 3.5%.

35.     With respect to the *Background of the Merger*, the Proxy Statement fails to disclose the reason why it was necessary to retain Citigroup Global Markets Inc. as an addition financial advisor in connection with the Proposed Transaction.

36.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Virtusa within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Virtusa, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Virtusa, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Virtusa, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

      B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

      C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: October 8, 2020

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*